IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| ALPHONSO BRONTAY BENFORD, | } | |
|---|---|---|
| | } | |
| Petitioner, | } | |
| | } | |
| v. | } | Case No.: 5:12-cv-8021-RDP |
| | } | Criminal No.: 5:09-cr-441-RDP-RRA |
| UNITED STATES OF AMERICA, | } | |
| | } | |
| Respondent. | } | |

## MEMORANDUM OPINION

The court has before it Alphonso Brontay Benford's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. #1), filed on May 24, 2012. Pursuant to the court's orders of May 31, 2012 (Doc. #2) and June 22, 2012 (Doc. #4), the United States Government filed an Opposition (Doc. #9) to Benford's Section 2255 Motion on August 28, 2013. In its response, the Government seeks to have the Motion to Vacate (Doc. #1) dismissed in its entirety, without an evidentiary hearing. (*See* Doc. #9 at 1).

Petitioner filed a Motion for Evidentiary Hearing, Production of Discovery, and Response to Interrogatories (Doc. #5) on August 6, 2012. Petitioner responded to the Government's opposition on September 10, 2012. (*See* Doc. #10). The Petitioner filed an additional Response (Doc. #11) on August 12, 2012 and a Supplement (Doc. #16) on September 9, 2013.[1]

Petitioner Benford's Motion to Vacate (Doc. #1) seeks relief on the following grounds: (1) that the evidence seized from his residence was obtained without a valid search warrant; (2) that convictions were obtained in violation of Due Process rights; (3) additional claims of ineffective

---

[1] The Amendment/Supplement (Doc. #16) adds the following considerations to the original memorandum in support of the Petition: (1) that appeal counsel was ineffective and (2) that the judgment of conviction and sentence violated due process because "the district court failed to elicit specific objections from by trial counsel's Rule 32 objections in the PSI or to fully articulate my objections that were presented to the court at sentencing which would have afforded a meaningful appeal/sentence." (Doc. #16 at 2-3). However, those claims for relief fail for the same reasons as do the original claims. *See* discussion Sections II. and III., *infra*.

assistance of counsel; and (4) that the Guidelines were incorrectly calculated and that his Offense Level should have been 31 instead of 32.

**I.     Background**

On October 29, 2009, a federal grand jury returned a two-count indictment against Alphonso Benford, charging him with being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). (*See* Doc. #1 in Case No.: 5:09cr441-RDP-RAA). The charges were based on Petitioner's 1997 state court conviction for discharging a firearm into an occupied building. (*See id.*). Count One charged Petitioner with possession of a Taurus .40 caliber pistol recovered from his vehicle. (*See id.*). Count Two charged him with possession of multiple firearms recovered from his residence. (*See id.*).

Prior to trial, Petitioner's counsel filed a Motion to Suppress Evidence and Statements.[2] (*See* Doc. #28 in Case No. 5:09cr441-RRA). In that Motion, Petitioner's counsel asserted that the search warrant contained intentional omissions which bore upon probable cause. (*See id.* at 9-10). Specifically, the Motion to Suppress filed on behalf of Petitioner argued: (1) that the warrant depended on the credibility of a confidential informant and that the warrant omitted any reference to the informant having been inside or buying drugs at Petitioner's residence; and (2) there was no reference to whether certain audio/video recordings of the informant purchasing drugs from the defendant were audible and whether they corroborated the informant's information or the identity of

---

[2] After obtaining the search warrant, officer's searched Petitioner's house. (*See* Doc. #74 in Case No. 5:09cr441-RDP-RRA at 135). In the master bedroom, they found five firearms: two in a safe, one under the mattress, one in a night stand, and one on top of a shelf. (*See* Doc. #75 in Case No. 5:09cr441-RDP-RRA at 106-107, 110-112, 116, 133, 136-138). They also found six boxes of ammunition. (*See id.* at 73). In the back bedroom, they found a .22 revolver, along with two boxes of ammunition. (*See id.* at 99). In the living room, there was another pistol on top of a china cabinet. (*See id.* at 47). The firearms were intermingled with Petitioner's personal items. For example, the firearm in the night stand was lying on top of Petitioner's wallet and the safe containing two pistols also contained condoms and lubricant. (*See id.* at 111, 116, 133, 136). The officers also discovered large sums of cash hidden in the garage and master bedroom of Petitioner's house. (*See* Doc. #74 in Case No. 5:09cr441-RDP-RRA at 143).
  In addition to a package with the "strong odor of cocaine," other evidence of drug related activity included a digital scale in the kitchen and in the bedroom, a bag of marijuana and four MDMA pills. (*See* Doc. #75 in Case No. 5:09cr441-RDP-RRA at 48, 70).

Petitioner. (*See id.* at 10). The Motion argued that absent such information, the affidavit lacked probable cause on its face. (*See id.*). A hearing on the motion to suppress was held on February 4, 2010. (*See* Doc. #82 in Case No. 5:09cr441-RDP-RRA). At the hearing, the district court held that there was sufficient probable cause for the search of Petitioner's residence. (*See id.* at 4). The court relied on *Franks v. Delaware* 438 U.S. 154 (1978), and ruled that Petitioner had not made a sufficient showing of falsity in the affidavit and that the stated omissions did not affect probable cause. (*See id.* at 4-7).

At trial, Petitioner was convicted of the charges in both counts of the indictment. Prior to the sentencing hearing, a Presentence Investigation Report ("PSR") was prepared and disclosed to the parties. The PSR calculated a total offense level of 32. (PSR ¶ 30). This included a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice and a four-level enhancement under § 2K2.1(b)(6) for use of a firearm in connection with another felony offense. (PSR ¶¶ 24, 27). Petitioner objected to both enhancements. (*See* Doc. #59 in Case No. 5:09cr441-RDP-RRA). The court heard testimony and argument from both sides before adopting the total offense level recommended by the PSR. (*See* Doc. #79 at 27, 35, 39 in Case No. 5:09cr441-RDP-RRA). Petitioner was sentenced to 174 months for violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). (*see* Doc. #1 at 1).

Petitioner appealed his conviction and sentence arguing that: (1) the district court erred in improperly admitting certain evidence in violation of Federal Rules of Evidence 404(b) and 403; (2) the district court improperly admitted hearsay evidence thus violating rights under the Confrontation Clause; (3) the jury's finding that Petitioner possessed the firearm found in his vehicle was not supported by sufficient evidence; (4) the government's failure to provide a witness' testimony from

a previous trial violated *Brady v. Maryland*, 373 U.S. 83 (1963) and the Jencks Act, 18 U.S.C. § 3500; (5) the cumulative effect of these errors deprived Petitioner of a fair trial; and (6) the district court erred in applying the two level sentencing enhancement for obstruction of justice. Contrary to these arguments, Petitioner's conviction and sentence were affirmed by the Eleventh Circuit on August 17, 2011. (*See* Doc. #89 in Case No. 5:09cr441-RDP-RRA).

**II.     Discussion**

A federal prisoner may file a motion to vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without personal jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255, ¶ 1. It is well settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Here, Petitioner seeks relief on the following grounds: (1) that the evidence seized from his residence was obtained without a valid search warrant; (2) that convictions were obtained in violation of Due Process rights; (3) additional claims of ineffective assistance of counsel; and (4) that the Guidelines were incorrectly calculated and that his Offense Level should have been 31 instead of 32.

**A.     Validity of the Search Warrant**

In Ground One, Petitioner argues that his conviction should be vacated because "the Government used and presented evidence to the grand jury and at my jury-trial officer Terry Lucas had gained pursuant to an unconstitutional search and seizure on August 5, 2008 with an illegal and invalid affidavit/warrant." (*See* Doc. #1 at 2-10). Petitioner states that the affiant for the search

warrant stated in county courts that he did not have probable cause to search Petitioner's residence,[3] that the judge who signed the warrant did not "investigate" it first, that items were seized that were not part of the warrant, that the informant for the warrant was not credible, and that the affidavit was "bare bones," lacking sufficient times and dates, and contained "nothing more than conclusory allegations." (*See* Doc. #1 at 3-10). Petitioner relies on *United States v. Leon*, 468 U.S. 897 (1984) for the contention that the search warrant is not entitled to a presumption of good faith where it is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Doc. #1 at 3) (citing *Leon*, 468 U.S. at 923).

The first defect of Petitioner's argument is that it is procedurally defaulted. Petitioner appealed his conviction and sentence. (*See* discussion *supra* Section I). The claim regarding the validity of the search warrant was not presented on direct appeal, although many other grounds were introduced. Petitioner was represented by counsel on appeal, but Mr. Threatt did not handle the appeal. (*See* Doc. #65 in Case No. 5:09cr441-RDP-RRA). Since Petitioner has not demonstrated a showing of cause or actual prejudice to prevent the procedural default, this claim is procedurally barred.

In addition, Plaintiff's claim fails on the merits. Before trial, the court held a hearing on a Motion to Suppress, the basis for which was the argument that the affidavit lacked probable cause on its face. (*See* discussion *supra* Section I). The court held that "the affidavit has probable cause" and "there's probable cause for the search." (Doc. #82 in Case No. 5:09cr441-RDP-RRA at 4). Defense counsel conceded this to be the case upon review of *Franks v. Delaware*, 438 U.S. 154

---

[3] On the aspects of the Motion to Vacate that relate to Officer Lucas and his investigation, Petitioner argues that "an evidentiary hearing must be held to investigate Officer Lucas and his investigation." (Doc. #1 at 10) (citing *United States v. Aecardo*, 749 F.2d 1477, 1481 (11th Cir. 1985). He filed a separate Motion for Evidentiary Hearing, Production of Discovery, and Response to Interrogatories (Doc. #5) on August 6, 2012.

(1978).  (*See id.* at 6-7).  Facts developed at trial further cemented this ruling.  An informant purchased $8,000 worth of cocaine from Petitioner.  (*See* Doc. #74 in Case No. 5:09cr441-RDP-RRA at 116, 121-125, 127).  When Petitioner's truck was stopped, he had $7,600 on his person, in cash, and four hydrocodone pills (in addition to the semi-automatic hand gun).  (*See* Doc. #75 in Case No. 5:09cr441-RDP-RRA at 132).  As such, it is clear that there was probable cause for the search.  Ground One of the Motion to Vacate, on the validity of the search warrant, is due to be denied.

        **B.**       **Violation of Due Process**

In Ground Two of the Motion to Vacate, Petitioner argues that the Government failed to establish that he knowingly had actual or constructive possession of a weapon in accordance with *United States v. Gunn*, 369 F.3d 1229, 1235 (11th Cir. 2004).  (*See* Doc. #1 at 11).  He argues that he had hastily switched vehicles with another individual on the day of his arrest and the gun was not his and was not easily visible in the car.  (*See id.*).  Defense counsel, Petitioner argues, should have questioned witnesses differently on this issue on cross examination.  (*See id.*).

This is essentially a claim for ineffective assistance of counsel, which is explored further in Section II.C.1. as related to the standard developed in *Strickland v. Washington*, 466 U.S. 668, 687, 689 (1984).  While defense counsel may not have asked all of the questions in the manner in which Petitioner would have preferred, the officers testifying about possession of the gun were in fact cross-examined and asked about their personal observations related to the firearm and its location in the vehicle.  (*See* Doc. #74 in Case No. 5:09cr441-RDP-RRA at 159-160; *see also* Doc. #75 in Case No. 5:09cr441-RDP-RRA at 240-241, 253-255).  Therefore, Ground Two of the Motion to Vacate does not provide Petitioner an avenue for relief.

### C.  Ineffective Assistance of Counsel

Ground Three of the habeas motion asserts that Petitioner's counsel was ineffective because he failed to effectively cross-examine government witnesses with information that Petitioner had provided to him, failed to investigate the fact finding process of the Government (and suppress evidence at the suppression hearing), and failed to correctly calculate and object to the PreSentence Report.[4]  (*See* Doc. #1 at 12-13).  Each component of Petitioner's ineffective assistance claim will be considered in turn.

#### 1.  Cross Examining Witnesses and General Investigation

Petitioner's argument for ineffective assistance of counsel begins with a claim that defense counsel did not listen to his ideas for strategy and "create the scene" for the jury.  "My substantial rights were so violated when Mr. Threatt failed to effectively assist my defense to form a strategy, investigate and listen to my statements about what happened . . . ".  (Doc. #1 at 13).

To make a successful claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  A defendant's ineffective assistance claim fails if he cannot demonstrate both.  *See Strickland v. Washington*, 466 U.S. 668, 687, 689 (1984).  The prongs need not be considered in any particular order; therefore, the performance prong need not be considered if the prejudice prong cannot be satisfied, and vice versa.  *See Dell v. United States*, 710 F.3d 1267, 1274 (11th Cir. 2013).

Regarding the performance prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

---

[4] Each of these arguments for ineffective assistance of counsel can be boiled down to an argument that there was insufficient evidence to find Petitioner guilty of Count One.  However, this issue was raised on direct appeal.  (*See* discussion Section I., *supra*).  On this basis alone, the Motion to Vacate, as it argues ineffective assistance of counsel, is due to be denied.  *See United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981) ("[O]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack filed under Section 2255.").

*Strickland,* 466 U.S. at 690. The prisoner must "establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment." *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004). To show prejudice, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." *Butcher*, 368 F.3d at 1293. A strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 2065.

That Petitioner did not like his counsel's strategy, or agree with his methods at trial, does not make a showing of deficient performance under *Strickland*. In other words, a lawyer's "strategic decisions made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." And the "strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel" such as Mr. Threatt. *See Rhode v. Hall*, 582 F.3d 1273, 1282 (11th Cir. 2009). Mr. Threatt cross-examined all witnesses and asked at least one law enforcement officer about the location of the firearm. The answer he received obviously is not one that Petitioner agrees with. Petitioner himself testified about the location of the firearm, and that testimony differed from the testimony of the officer. But emphatically the role of the jury to determine which of the witnesses to believe. *See United States v. Kendrick*, 682 F.3d 974, 985 (11th Cir. 2012). Petitioner's argument that asking the questions to the officers a different way might have yielded different answers is not a showing of deficient performance under *Strickland*. (*See* Doc. #1 at 13) ("Defense counsel Glennon Threatt failed to form

8

a defense strategy and investigate the Government's fact finding process, by not questioning the testimony of the Government's witness, Officer Lucas and Officer McDaniels, *reasonably* about Count 1, the weapon found in the truck on cross examination. . . . Mr. Threatt *failed to create the scene* to the jury and cross-examine the Officer's testimony *as Benford had stated to him*.") (emphasis added).

Moreover, Petitioner has not demonstrated that he was prejudiced by any stated deficiency of defense counsel. Petitioner himself took the stand during trial and testified that the firearm was not his. Through his own testimony, he had the opportunity to "create the scene." The jury was then free to weigh the evidence and consider defendant's testimony in light of the Government's witnesses' testimony. *See United States v. Kendrick*, 682 F.3d 974, 985 (11th Cir. 2012). For these reasons, defense counsel was not ineffective in representing Benford.

### 2. Suppression Hearing

Petitioner also argues that but for defense counsel's deficiency in forming a strategy and investigating the Government's facts, the evidence used at trial from the search warrant would have been suppressed. (*See* Doc. #1 at 14-15). "Mr. Threatt failed to investigate Officer Lucas's affidavit/warrant, the same information that I provided to the Judge at sentencing. . . . Had Mr. Threatt properly investigated the affidavit/warrant as I articulated in Ground One of this motion, he would have been able to suppress Count Two because Officer Lucas is dishonest and reckless in his affidavit underlying his warrant." (*Id.* at 14).

This argument restates issues already analyzed by the court in Sections II.A. and C.1., *supra*. For the same reasons stated therein, it is not sufficient to support the Motion to Vacate.

9

### 3. Guideline Calculations

Although Mr. Threatt did object to the Presentence Report, Petitioner argues that he failed to thoroughly state the grounds for those objections as related to the evidence that the Petitioner would have liked to have seen come out at trial. (*See* Doc. #1 at 15). Specifically, Petitioner argues that the offense conduct used in the PSR was incorrect and should have been suppressed. "Had Mr. Threatt properly assisted Benford at sentencing Benford's sentence in the middle of the guidelines would have been different from what Benford has, therefore the miscalculation and sentence is in violation of due process." (Doc. #1 at 15).

To the extent this argument restates the Petitioner's arguments regarding the court's suppression ruling, it holds no water. (*See* discussion Section II.A. and Section II.C.2, *supra*). To the extent the argument restates the efficacy of defense counsel in questioning witnesses at trial and engaging in trial strategy, it also holds no water. (*See* discussion Section II.C.1, *supra*). With regard to the calculation itself, it was correct regardless of defense counsel's "failure to state that the calculation was higher than what was allowed by U.S.S.G. 2K2.1 (b)." (Doc. #1 at 15). While U.S.S.G. § 2K2.1(b) indicates that the cumulative application of offense characteristics set forth in § 2K2.1(b)(1) through (b)(4) should not exceed 29, that was not the baseline used in Petitioner's case. Petitioner's base offense level was 20 because he had previously been convicted of a crime of violence. (PSR, ¶20). Because Petitioner's offense involved a total of eight firearms, four levels were added. (PSR, ¶ 21). Two additional levels were added because one of the firearms was stolen. (PSR, ¶ 23). Thus, the cumulative effect of the Base Offense Level and the Offense Characteristics at §2K2.1(b)(1) through (b)(4) was 26. Ultimately, four more levels were added for Petitioner's possession of firearms in connection with another felony. (PSR, ¶24). However, this was not an

offense characteristic contained in §2K2.1(b)(1) through (b)(4), so the Level 29 cap was not an issue. The final two levels were added based on the finding that Petitioner obstructed justice. (PSR, ¶ 27). All of this resulted in a correct Total Offense Level of 32.

Since there was no mistake made in calculating the Total Offense Level, there was no prejudice to Petitioner and no unreasonable performance on the part of defense counsel. *See Strickland*, 466 U.S. at 687-690. On this ground, the Motion to Vacate is due to be denied.

### D.     The Sentencing Guidelines Calculation

Ground Four of the Motion to Vacate argues that the court "based its judgment of conviction and sentence according to incorrect Sentencing Guidelines which has violated Benford's [right to] due process." (Doc. #1 at 15). Specifically, on June 17, 2010, the court sentenced Benford in the middle of the guidelines range at base level 32, criminal history III, for a total of 174 months, with counts 1 and 2 running consecutively. (*see* Doc. #1 at 15). Benford argues that the "calculation should be zero, but since Benford was found guilty by a jury the offense level should be 31 instead of 32." (Doc. #1 at 16). This claim made in Count Four is purely factual and is not based on any ineffective assistance of counsel claim.

As explained *supra*, after conviction at trial and prior to sentencing, a Presentence Investigation Report ("PSR") was prepared and disclosed to the parties. The PSR calculated a total offense level of 32. (PSR, ¶ 30). This included a two-level enhancement under U.S.S.G. §3C1.1 for obstruction of justice and a four-level enhancement under § 2K2.1(b)(6) for use of a firearm in connection with a felony offense. (PSR, ¶¶ 24, 27). Petitioner objected to both enhancements. (*See* Doc. #59 in Case No. 5:09cr441-RDP-RRA at 2-3). After hearing testimony and argument from both sides, the court adopted the total offense level recommended by the PSR and held that the two

challenged enhancements were applicable. (*See* Doc. #79 in Case No. 5:09cr441-RDP-RRA at 27, 35, 39). With respect to the obstruction of justice enhancement, the court found that Petitioner perjured himself, particularly with respect to his explanations for the locations of the charged firearms and his access to them. (*See id.* at 27). With respect to the use of a firearm enhancement, the court found that in light of the MDMA in the master bedroom, which also had five charged firearms, and nearly $300,000 found in the home, there was a preponderance of evidence that Petitioner used the firearms in connection with a felony offense. (*See id.* at 35). Petitioner was sentenced to 120 months for Count One and 54 months for Count Two, with the sentences to run concurrently. (*See id.* at 54, 57).

Petitioner's factual claim for incorrect base offense level is *not* one which he raised on direct appeal. (*See* discussion Section I., *supra*). And claims not raised on direct appeal are procedurally defaulted absent a showing of cause and actual prejudice. *See United States v. Frady*, 456 U.S. 152, 166 (1982); *see also Parks v. United States*, 832 F.2d 1244 (11th Cir. 1987) (claims of alleged errors in sentencing could not be raised for the first time in a collateral attack). On this ground alone, Ground Four of the Motion to Vacate is due to be denied because it is procedurally defaulted. Further, as explained *supra*, Petitioner's claim fails on the merits —there was no error in calculating the Total Offense Level. Therefore, Ground Four of the Motion to Vacate is due to be denied.

### III. The Motion for Evidentiary Hearing, Production of Discovery, and Response to Interrogatories

#### A. Evidentiary Hearing

On August 6, 2013, Petitioner filed a Motion "to request an Evidentiary Hearing, Production of Discovery, and a response to the included interrogatories to examine the Government's fact-

finding process, to look into the good faith of law enforcement's investigation and to prove my innocence of the charges against me to avoid a miscarriage of justice." (Doc. #5 at 1). In the motion, Petitioner continues to argue that defense counsel was ineffective in investigating "the facts and probable cause of the Government and State of Alabama's charges against me" and that the search warrant can be voided if the affidavit supporting the warrant was deliberately false or based on a reckless disregard for the truth. (*See* Doc. #5 at 2-3). Petitioner argues that these issues have not been properly investigated and that an evidentiary hearing is necessary. (*See* Doc. #5 at 1-4).

Because the claims in Grounds One, Two, and Four are procedurally defaulted, Petitioner is not entitled to an evidentiary hearing on any of those claims. *See Schriro v. Landrigan,* 550 U.S. 465, 474 (2007) ("Of course, if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). As for his claim(s) for ineffective assistance of counsel, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro,* 550 U.S. at 474. But conclusory allegations do not support § 2255 relief or entitle a petitioner to an evidentiary hearing. *See Lynn v. United States*, 365 F.3d 1225, 1238 (11th Cir. 2004). Moreover, a petitioner is not entitled to a hearing where the claims are refuted by the record or based on unsupported generalizations. *See Guerra v. United States*, 588 F.2d 519 (5th Cir. 1979).

Unfortunately for Petitioner, all of his claims regarding ineffective assistance of counsel are based on unsupported generalizations. Claims that a different result would have been reached at trial if defense counsel had only asked different questions or engaged in a different trial strategy are

13

purely speculative. Claims that the search warrant lacked probable cause are clearly refuted by the record. For these reasons, the Motion for Evidentiary Hearing is due to be denied.

### B. Production of Discovery and Interrogatories

Petitioner seeks to have the Government respond to interrogatories and provide him with other discovery. (*See* Doc. #5 at 4-6). However, a "habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, the court has discretion to authorize discovery for "good cause" shown. *See* Rule 6(a), Rules Governing § 255 Cases. That is, discovery should be permitted if there are "specific allegations before the court [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 9008-909 (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). However, "good cause for discovery cannot arise from mere speculation." *Arthur v. Allen*, 459 F.3d 1310 (11th Cir. 2006). Therefore, the motion for discovery and answers to interrogatories is due to be denied for the same reasons as it was in Section III.A., *supra*.

### IV. Conclusion

For all of the foregoing reasons, Benford's Motion to Vacate, Set Aside, or Correct Sentence (Doc. #1) is due to be denied.[5] The Motion for Evidentiary Hearing, Production of Discovery, and Response to Interrogatories (Doc. #5) is due to be denied.

A separate order will be entered dismissing this case in its entirety.

---

[5] In the criminal case–5:09-cr-441-RDP-RRA–Petitioner has filed a number of motions. Those motions seek relief that is either due to be denied or which overlaps with the relief Petitioner seeks in his habeas petition. With one exception, there simply is no need for the court to address the motions. That one exception is Plaintiff's motion to recuse the undersigned. (Doc. #91). In that particular motion, Petitioner simply has not advanced any colorable basis for recusal or disqualification. *See* 28 U.S.C. § 455.

**DONE** and **ORDERED** this     22nd     day of November, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE